## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

IN RE SUBPOENAS SERVED ON THE )
AMERICAN KIDNEY FUND, INC. )
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ )
                     )
UNITEDHEALTHCARE OF FLORIDA, )
INC., *et al.*, )
                     )
       Plaintiffs, )
                     )
       v. )           Civil Action No. TDC-17-1787
                     )
AMERICAN RENAL ASSOCIATES )
HOLDINGS, INC., *et al.*, )
                     )
       Defendants. )
                     )

## REPORT AND RECOMMENDATION

Pending before the Court is Non-party American Kidney Fund, Inc.'s ("AKF") Renewed Motion for Attorneys' Fees ("AKF's Renewed Mot."). ECF No. 55. Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Theodore D. Chuang referred this matter to the undersigned for the making of a Report and Recommendation. Also pending before the Court is AKF's informal motion to strike that was submitted to the Court by letter. *See* Letter from Chong Park to the Court dated Jan. 17, 2019 ("AKF's Letter-Mot. to Strike"), ECF No. 61. The Court has reviewed AKF's Renewed Motion and memoranda related thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md. July 1, 2016). For the reasons stated herein, I recommend that AKF's Renewed Motion for Fees as well as its Letter-Motion to Strike be denied.

## I. Pertinent Factual and Procedural Background

AKF's Renewed Motion is the latest filing in what has been a highly contentious proceeding concerning whether a party's discovery demands constitute an undue burden on a non-party entity that is heavily implicated in the events at issue in the underlying proceeding. This motion is the result of subpoenas issued in a case commenced by UnitedHealthcare of Florida, Inc. ("UHC of Florida") and All Savers Insurance Company ("ASI") (collectively "United") in the Southern District of Florida. *UnitedHealthcare of Florida, Inc. v. American Renal Associates Holdings, Inc.,* Civ. A. No. 16-cv-81180-KAM (S.D. Fl. filed July 1, 2016) (hereinafter the "Florida Litigation"). While the Florida Litigation has since been settled, the allegations at issue in that matter remain key to determining the merits of AKF's Renewed Motion.

### Factual History

United commenced a civil suit against the America Renal Associates Holdings, Inc., ("ARAH") and the American Renal Associates, LLC ("ARA"). First Am. Compl., ("United Am. Compl."), AKF's Renewed Mot., ECF No. 55-1, Ex. 1-1(c). UHC of Florida is an insurance company that provides coverage to individuals in the State of Florida. *Id.* at ¶ 31. ASI is an insurance company that provides coverage for individuals in the State of Ohio. *Id.* at ¶ 32. ARAH is a "national provider of kidney dialysis services for patients suffering from chronic kidney failure, also known as end stage renal disease, or ESRD." *Id.* at ¶ 33. ARA is a dialysis provider that operates clinics in various states, including Florida and Ohio. *Id.* at ¶ 34. ARA is "100% owned by ARAH." *Id.*

At issue in the Florida Litigation was ARAH's and ARA's alleged practice of "patient-steering." *Id.* at ¶ 1. According to United, ARA allegedly "convince[d] dozens of patients in

Florida and Ohio to abandon their primary Medicaid coverage (or forgo available Medicare coverage) and enroll into commercial plans offered by United through the health insurance exchanges established under the Patient Protection and Affordable Care Act ('ACA')." *Id.* at ¶ 4. By doing so, ARA was allegedly able to seek reimbursement for higher amounts per treatment session than it would otherwise have been able to if these patients were under Medicare or Medicaid coverage. *Id.* at ¶¶ 6, 120-24, 136, 292-98.

Although AFK was never named as a party to the Florida Litigation, United accused AKF of being a willing co-conspirator in this alleged patient-steering scheme. *Id.* at ¶¶ 6, 101-19, 120-55. AKF is a 501(c)(3) tax-exempt non-profit that provides services, educational programing, and financial resources to individuals and families living with kidney disease. *Id.* at ¶¶ 101-02. Among the programs it offers is the Health Insurance Premium Payment ("HIPP") program that pays the insurance premiums for eligible patients. *Id.* at ¶ 103. The HIPP is primarily funded through donations, including donations from dialysis providers. *Id.* at ¶¶ 103-04.

According to United, as a third-party provider of insurance premiums AKF played a key role in the alleged patient-steering scheme. *Id.* at ¶¶ 190-96. For the alleged scheme to work properly, patients would need to be able to pay their insurance premiums. *Id.* at ¶¶ 125-28. However, the patients ARA allegedly steered towards private insurance plans were of limited financial means and likely unable to pay high premiums. *Id.* at ¶ 125. According to United, ARA "guided" patients to AKF's HIPP program and assisted them in filling out applications. *Id.* at ¶¶ 128, 137. While the rules governing eligibility for the HIPP program at the time prohibited individuals who were eligible for Medicare or Medicaid from receiving funds, patients ARA allegedly sent to AKF were not barred from the HIPP program. *Id.* at ¶ 128. According to

United, AKF tracked which providers gave contributions to its HIPP fund and determined whether to approve patients' applications based on their provider's contributions. *Id.* at ¶ 128. For its part, ARA allegedly "ensured that [its] patients would receive HIPP assistance by making 'charitable contributions' to AKF 'earmarked for the patients' premiums in accordance with AKF policy at the time." *Id.* at ¶ 128.

<u>**Procedural History**</u>

On September 26, 2016, United served AKF with a set of subpoenas, which included requests for 33 categories of documents and sought testimony from an AKF representative on 11 topics. *See* Subpoena to Testify at a Dep. in a Civil Action & Subpoena to Produc. Docs. (the "First Subpoenas") ECF No. 55-1, Ex. 1-1(d). AKF filed objections to the First Subpoenas on October 4, 2016 ("AKF's Objections to the First Subpoenas") ECF No. 55-1, Ex. 1-1(l).

On October 19, 2016, counsel for United and AKF conferred regarding the First Subpoenas. No resolution was reached at that time. AKF's counsel avers that United made "no further substantive communications" until December 29, 2016. On that date, United's counsel sent an e-mail offering to limit its requests in response to AKF's objections and in an effort to "reduce[] the burden on [AKF], while still allowing United access to the materials relevant to its case against ARA." E-mail from Jeffery S. Gleason to Jeffrey B. Bushofsky ("Dec. 29, 2016 E-mail Between Counsel") ECF No. 55-1, Ex. 1-1(m). While counsel for both sides agreed to have a phone call to discuss the First Subpoenas in mid-January 2017, United's counsel cancelled the meeting at the last minute and requested the call be rescheduled. *See* E-mail from Jeffery S. Gleason to Jeffrey B. Bushofsky ("Jan. 13, 2017 E-mail Between Counsel") ECF No. 41-4, Ex. 1-1(n). There is no indication that this call was rescheduled or that any communication occurred between the two parties until June 2017.

On June 2, 2017, United withdrew the First Subpoenas and served AKF by hand with a second set of subpoenas, which included requests for 27 categories of documents and sought to depose an AKF representative on 19 topics. *See* Subpoena to Testify at a Dep. in a Civil Action & Subpoena to Produc. Docs. (the "Second Subpoenas") ECF No. 55-1, Ex. 1-1(a). On June 15, 2017, AKF served responses and objections to the Second Subpoenas. AKF's Objections to the Second Subpoenas, ECF No. 55-1, Ex. 1-1(p). On June 27, 2017, the parties held a "meet and confer" to discuss the Second Subpoenas.

On June 28, 2017, AKF commenced the proceeding before this Court by filing a Motion to Quash the Second Subpoenas. *See* AKF's Mot. to Quash Doc. and Dep. Subpoenas ("AKF's Mot. to Quash"), ECF No. 1. Although the motion was denied without prejudice for failing to comply with the Court's Case Management Order, the parties agreed to court mediation and were subsequently referred to the undersigned.

In October 2017,[1] the parties reached an agreement in terms of what material would be turned over in response to United's Second Subpoenas. J. Status Report 2 (June 26, 2018), ECF No. 38. On January 8, 2018, the undersigned approved the parties' motion for a protective order. On January 30, 2018, AKF completed its agreed upon document production. *Id.* On March 20, 2018, United completed its Rule 30(b)(6) depositions of AKF. *Id.* at 3.

In their Joint Status Report, the parties advised that—aside from the issue of expense reimbursement—the matters pending before this Court were resolved. *Id.* at 2-3.

---

[1] While the parties' Joint Status Report states this agreement was reached in October 2016, it was actually in October 2017. *See* Order Confirming Tel. Conf. for Oct. 19, 2017, dated Oct. 18, 2017, ECF No. 31.

On August 9, 2018, AKF filed its Motion for Attorneys' Fees requesting the Court "award it attorneys' fees in connection with its response to two sets of subpoenas for documents and testimony . . . ." AKF's Mot. for Fees 1.

On November 8, 2018, this Court denied AKF's Motion for Fees without prejudice for failing to include "supplemental information regarding fees in compliance with Appendix B of the Local Rules of the Court." The Court gave AKF until December 8, 2018, to submit the necessary information. ECF No. 54. United had "until January 11, 2019, to submit any additional response."

On December 7, 2018, AKF's Renewed Motion was filed and AKF included as exhibits its original Motion for Fees and Reply. It also included a new breakdown of fees and costs in an effort to comply with the Local Rules, which it filed under seal. On January 11, 2019, United filed its opposition under seal. On January 17, 2019, AKF filed a letter requesting that the Court "strike the 20-page, unauthorized sur-reply brief" filed by United. United responded that same day with its own letter opposing AKF's informal motion to strike.

## II. Analysis

### A. AKF's Motion to Strike

As a threshold matter, AKF argues that this Court should strike United's "unauthorized sur-reply" as it "does not actually address [AKF's] recent submission of costs consistent with the Court's order and Local Rule 105(2)(a)." AKF's Letter-Mot. to Strike 1. United counters that it was permitted by this Court's November 8, 2018 Order to submit "any additional response" to AKF's supplemental filing and that it was also entitled to respond to AKF's renewed motion and any new material therein. *See* United's Letter-Opp'n, ECF No. 62.

The Local Rules state in pertinent part that,

> All motions must be filed within deadlines set by the Court. Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda. Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed.

Local Rule 105(2)(a) (D. Md. July 1, 2016). This Court gave both parties an opportunity to supplement their filings relating to AKF's original Motion for Fees and included deadlines by which they were to file that material. AKF chose to submit a renewed motion for fees in which it included its prior filings and exhibits. AKF also made requests for additional fees and newly formatted information concerning the fees and costs it incurred during the pendency of this matter. It did so in accordance with the deadlines in the Courts November 8, 2018 Order. Therefore, the Court will consider United's opposition as permitted by Local Rule 105(2)(a), and as a supplement to its response in opposition. The Court further deems United's opposition to be timely filed. Therefore, I recommend denying AKF's Letter-Motion to Strike.

## B. Rule 45(d)

Rule 45(d) of the Federal Rules of Civil Procedure governs demands upon non-parties for the production of persons or documents. It contains "'two related avenues by which a person subject to a subpoena may be protected from the costs of compliance: sanctions under Rule 45(d)(1) and cost-shifting under Rule 45(d)(2)(B)(ii).'" *In re Modern Plastics Corp.*, 890 F.3d 244, 250 (6th Cir. 2018) (internal quotations omitted) (citing *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013)). AKF argues it is entitled to attorney's fees and costs under both subsections.

### i. Cost Shifting Under Rule 45(d)(2)(B)(ii)

The mandatory cost-shifting portion of Rule 45's protections is triggered by the actions of the responding party. Specifically, if a non-party objects to a subpoena request, then:

> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
>
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(d)(2)(B). Therefore, the protections of Rule 45(d)(2)(B)(ii) are only applicable if a responding non-party timely enters objections to the subpoena and a court subsequently issues an order compelling a response to the requests. *Lee v. Virginia State Bd. of Elections*, No. 3:15CV357 (HEH-RCY), 2016 WL 6915308, at *2 (E.D. Va. Sept. 2, 2016); *see also In re American Nurses Assoc.*, 643 F. App'x 310, 314 (4th Cir. 2016) (stating that "the non-party may contest the subpoena, and if a court orders production on the subpoena, 'the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance'"); *In re Modern Plastics*, 890 F. 3d at 252 (same). Notably, if the responding party objects to, but then produces the discovery requested prior to the court issuing an order requiring such production, Rule 45(d)(2)(B) does not apply. *Lee*, 2016 WL 6915308 at *2. The fact that the responding party may have already undertaken internal efforts to comply with the subpoena before the order was issued does not impact that party's eligibility for this avenue of protection; the action at issue is whether the contested information was voluntarily turned over to the serving party without an intervening court order directing that action. *See In re Modern Plastics*, 890 F. 3d at 252.

Once an order has been issued compelling a non-party to comply with a subpoena, "the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *Legal Voice*, 738 F. 3d at 1178. "[I]f expenses are significant, the district court must shift the expenses above the level of 'significance' to the

party serving the subpoena." *G & E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 315 (D.D.C. 2016). However, it is not enough that a party incurred significant expenses in the course of dealing with the subpoena in general; the expenses considered must have resulted from compliance with the subpoena. *See id.* at 316 ("It is critical, therefore, that only expenses that result from, and therefore, are caused by, the order of compliance are potentially compensable."). Shifting attorney's fees presents an additional inquiry for the Court. On the one hand, attorney's fees incurred that are "necessary to a discovery proceeding under Rule 45" are considered an "expense" and may be shifted pursuant to Rule 45(d)(2)(B). *See In re American Nurses Assoc.*, 643 F. App'x at 314 (holding that shifting necessary attorney's fees is "consistent" with the amendment to Rule 45's purpose to provide more protections for individuals required to assist the court as well as "encouraging discovering parties to keep discovery requests narrow and specific to the issues at hand in the underlying litigation"). On the other hand, attorney's fees incurred for other purposes—such as drafting a motion to obtain reimbursement of attorney's fees—are not eligible for fee shifting under Rule 45(d)(2)(B)(ii). *Id.* (holding fees incurred for "preparation of discovery status reports, attendance at discovery hearings, privilege review of discovery materials, and HIPPA review of discovery materials were all necessary to [ ] compliance with the discovery order" but "attorney's fees incurred in pursuit of attorney's fees were not"). In any event, such fees must still be reasonable in order for a party to recover them. *See G & E Real Estate, Inc.*, 317 F.R.D. at 316-17 (listing cases).

In support of its argument that it is entitled to attorney's fees and costs under the cost-shifting portion of Rule 45, AKF argues that (1) there was an order issued by this Court which resulted in its compliance with United's subpoenas and (2) it incurred expenses in the course of litigating this matter and that these expenses were "no doubt significant for any organization."

AKF's Mem. of Law in Supp. of Its Mot. for Att'ys' Fees ("AKF's Mem. in Supp.") 23-24, AKF's Renewed Mot. Ex. 1; AKF's Reply 11-12.

A plain reading of Rule 45 and courts' subsequent interpretations are clear as to the prerequisite of a court order compelling compliance with a subpoena for Rule 45(d)(2)(B)(ii) to apply. It is not enough that a court issues an order which triggers events eventually resulting in a non-party's compliance; a court must issue an order specifically "compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Lee*, 2016 WL 6915308 at *2 ("Only when issuing such an order 'must' a court protect a non-party through means such as ordering reimbursement."). In this case, although it objected to all of United's requests and refused to produce any documents or people until after it filed its Motion to Quash and after it conducted weeks of negotiations, AKF still voluntarily chose to comply with the truncated list of agreed-to requests. To date, there has been no order issued by this or any court specifically requiring AKF to comply with United's subpoenas.

The Court is not persuaded by AKF's argument that limiting the rule's applicability to only those situations where a court orders compliance would stymie non-parties from engaging in court-supervised mediation and force them to insist on motion practice in order to avail themselves of such cost-shifting protection. AKF's Reply 11-12. Good-faith negotiations over subpoena requests often include the question of who will pay for costs necessary for compliance. If a non-party estimates those costs will be significant and supports this assertion with evidence, the compelling party would be pressured to agree to cover the costs or further limit its requests in light of the clear requirement of Rule 45(d)(2)(B)(ii). *See Legal Voice*, 738 F.3d at 1184 (citing *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (finding that Rule 45 "ma[k]e[s] cost shifting mandatory in all instances in which a non-party incurs significant

expense from compliance with a subpoena"). Accordingly, as no court order was issued compelling AKF to comply with United's subpoenas, AKF is not entitled to relief under Rule 45(d)(2)(B)(ii) and this portion of its motion should be denied.

### ii. Sanctions Under Rule 45(d)(1)

The second avenue of protection under Rule 45 is more discretionary in nature. Rule 45(d)(1) requires parties who issue subpoenas to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1); *Am. Piledriving Equip., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. ELH-11-01404, 2011 WL 5402441, at *2 (D. Md. Nov. 7, 2011). While "a party is entitled to information that is relevant to a claim or defense in the matter," *Smith v. United Salt Corp.*, No. 1:08–cv–00053, 2009 WL 2929343, at *5 (W.D. Va. Sept. 9, 2009),[2] when a dispute arises over the information requested "[c]ourts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents' . . . ." *In re Modern Plastics Corp.*, 890 F.3d at 251 (citations omitted). What constitutes an "undue burden" is assessed on a case-by-case basis. Factors considered include "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (citations omitted) (internal quotations omitted) (noting that "the status of that person as a non-party is a factor" courts should consider when assessing the burden); *see, e.g.*, *In re TQ Delta*, No. CV 17-MC-328-RGA, 2018 WL 5033756, at *2 (D. Del. Oct. 17, 2018) (quashing subpoenas that were found to be unduly burdensome as they were "extraordinarily

---

[2] *See also Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-CIV-24363, 2018 WL 1456614, at *4 (S.D. Fla. Mar. 23, 2018) (noting "courts treat the scope of discovery under a subpoena the same as the scope of discovery under Rule 26"); *In re Subpoena on Sorrento Therapeutics, Inc.*, No. 3:17-CV-2442-WQH-NLS, 2018 WL 788899, at *3 (S.D. Cal. Feb. 8, 2018) (same).

broad," requested "information that could be acquired from either the Plaintiff itself or publicly available sources," or were protected by attorney-client privilege). While it is not necessary to prove that a subpoena was served in bad faith, it is an additional factor courts consider when determining whether to order Rule 45 sanctions. *Id.* (citing cases); *see also Legal Voice*, 738 F.3d at 1185 ("A court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law.").

The fact that parties disagree over the demands of a subpoena does not automatically mean it poses an "undue burden." As stated in Rule 45, a serving party must take "reasonable steps to avoid" imposing such a burden. Fed. R. Civ. P. 45(d)(1). Where a serving party engages in good faith negotiations to resolve a conflict over its subpoena and to avoid imposing an undue burden, courts have declined to impose Rule 45 sanctions absent a showing that the subpoena was issued in bad faith, for an improper purpose, or in a manner inconsistent with existing law. *See, e.g.*, *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 23 (D.D.C. 2015) (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir.2012)) (finding a party complied with its duty to avoid undue burden where it attempted to resolve a matter in good faith for six weeks, "stated from the outset that it would not be seeking confidential source information," attempted to narrow the issues but ultimately to no avail, and "nothing on the record to suggest that [the party] issued the subpoena in bad faith or for an improper purpose"); *see also, e.g.*, *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (stating that Rule 45 provides for sanctions against "one issuing a vexatiously overbroad subpoena" but reversing sanctions awarded where a party engaged in "sufficient good faith efforts to negotiate reasonable parameters on the subpoena"). Accordingly, circuit courts have interpreted "undue burden" to be "'limited to harms inflicted by complying with the subpoena' and 'not to the adjudication of

related follow-on issues, such as whether the subpoenaed information is potentially protected by a privilege.'" *Goldberg*, 123 F. Supp. 3d at 23 (citing the Ninth Circuit's decision); *see also Tiberi*, 40 F.3d at 112. While courts have a duty to enforce Rule 45(d)(1), they also retain "discretion over the type and degree of sanction imposed." *Mount Hope Church*, 705 F.3d at 425; *see also Legal Voice*, 738 F.3d at 1185 ("[W]hile failure narrowly to tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which [the court has] said should not give rise to sanctions."); *see, e.g.*, *Diversified Funding Grp., LLC v. Hendon*, No. CV1700189VAPAFMX, 2017 WL 8889840, at *3 (C.D. Cal. Nov. 13, 2017), report and recommendation adopted, No. CV1700189VAPAFMX, 2018 WL 1870029 (C.D. Cal. Jan. 4, 2018) (ordering fees to be shifted but reducing the amount awarded as "the circumstances of this discovery dispute show counsel on both sides exchanging threats and accusations rather than engaging in a constructive dialogue in an attempt to resolve the subpoena dispute").

AKF argues that it is entitled to attorney's fees pursuant to Rule 45(d)(1) as "United made no attempt to avoid undu[ly] burden[ing]" AKF with its subpoena requests or to "limit its intrusion into the private records of low-income dialysis patients." AKF's Mem. in Supp. 18. AKF asserts that United's subpoenas sought information that was in the possession of other parties—including United—and that had "no relationship to the parties, subject matter, geography, and time period framed by the Complaint" in underlying Florida Litigation. *Id.* at 8-10, 18-19. AKF further argues that United's behavior throughout the proceedings exacerbated the burden on AKF. *Id.* at 20-21. According to AKF, United's underlying purpose for these subpoenas was improper as it was seeking "whatever information United could obtain to more broadly attack premium assistance for low-income people living with kidney disease." *Id.* at 22.

After reviewing the filings, exhibits, and transcripts of hearings, the Court finds that AKF does not present a completely reliable narration of events in this dispute. For example, it is factually untrue that United "made no attempt" to avoid imposing an undue burden on AKF. Correspondence between counsel shows United offered to tailor its requests on multiple occasions.[3] Further, a comparison between the Second Subpoenas and the ultimate agreement of what AKF would produce in response reveals that United made significant compromises without a court order.[4] Additionally, nothing about United's negotiation efforts appears to have been so onerous as to shift from "normal advocacy" to imposing an undue burden upon AKF. *See Legal Voice*, 738 F.3d at 1185. However, as AKF requests fees beginning from its receipt of the First Subpoenas, this Court will examine each set of subpoenas more closely to determine if either imposed an undue burden on AKF.

### 1. United's Subpoenas do not merit an award of sanctions.

Beginning with United's First Subpoenas, the Court finds that sanctions are not merited and will not recommend an award of fees or costs relating to those subpoenas. While United arguably failed to take "reasonable steps to avoid imposing an undue burden or expense" by letting the negotiation process lapse for a period of nearly six months, AKF objected to every request, produced nothing, and no one was deposed in response to the First Subpoenas. Furthermore, AKF never sought the Court's assistance with the First Subpoenas. It was not until more than eight months after it received those subpoenas that AKF filed a motion with this

---

[3] *See, e.g.*, E-mail from Jeffery S. Gleason to Jeffery J. Bushofsky (Dec. 29, 2016), AKF's Renewed Mot. Ex. 1-1(m) (offering to limit United's subpoena requests in response to AKF's objections and in an effort to "reduce[] the burden" on AKF and purportedly including a table outlining the proposed limitations).

[4] *Compare* Second Subpoenas *with* Letter from Jeffery J. Bushofsky to Anne M. Lockner (Oct. 16, 2017), AKF's Renewed Mot. Ex. 1-1(u).

Court. In the interim, while the parties had one discussion and some limited correspondence between counsel, no other meaningful labor occurred. AKF offers no satisfactory explanation to the Court for the delay in seeking its assistance. In fact, it seems apparent that both parties were aware from the outset of this matter that the discovery sought would be subject to more meaningful "good faith" negotiations to reduce or eliminate whatever undue burden existed. These negotiations began with the October 19, 2016 discussion and continued through the plan to talk further in January 2017. While the discussions stalled, it appears clear that no party expected something would be produced until after another discussion occurred. Aside from reviewing the Complaint in the Florida Litigation, AKF should not have engaged in extensive labors when drafting its objections to United's First Subpoenas.[5] Therefore, as AKF produced nothing in response to the First Subpoenas, it endured no apparent "burden" or prejudice. Further, in light of AKF's decision to stand on its objections alone, there is no apparent basis to even consider the efforts relating to the First Subpoenas in determining whether to impose sanctions. *See Goldberg*, 123 F. Supp. 3d at 23 (noting "undue burden" is "'limited to harms inflicted by complying with the subpoena'") (quoting *Mount Hope Church*, 705 F.3d 9, 23). Accordingly, no fees or costs should be awarded for tasks or actions completed in response to the First Subpoenas.

United's Second Subpoenas present a slightly different scenario. Specifically, United's motivation behind its requests in the Second Subpoenas is questionable in light of the discovery ruling in the Florida Litigation on January 11, 2017. While United did narrow the date range

---

[5] The overwhelming majority of AKF's objections to the First Subpoenas were global in nature. *See* AKF's Objections to First Subpoenas (objecting to various requests as "unduly burdensome and not proportional" or "obtainable from the parties to the litigation or that is publicly available"). Counsel could assert such objections without a "deep dive" into the documents held by AKF or the proposed topics for deposition.

from what it sought in the First Subpoenas, the Second Subpoenas still sought information from sources outside the parties to the underlying litigation.[6]  *See* Second Subpoenas 9-11, 20-23 (seeking information relating to "AKF's top five donating providers" as well as AKF's dealings with dialysis providers and HIPP in general).  This runs contrary to the Florida Court's explicit guidance to tailor the scope of discovery to the more limited claims pled as to ARA-related actions.  *See* Tr. of Disc. Hr'g in Fl. Lit. ("Jan. 11, 2017, Disc. Hr'g") 24, Jan. 11, 2017, AKF's Renewed Mot. Ex. 1-1(o).  Further, while the parties may have lacked meaningful direction as to the temporal limitation of discovery until the January 11, 2017 ruling, once the court in the Florida Litigation limited discovery to activities occurring after October 1, 2014, United had no basis in seeking documents outside that range.  *See id.* at 7-9.  The Court further notes that throughout this proceeding and the underlying Florida Litigation, United's justification for seeking information related to AKF has remained consistent:  AKF is a co-conspirator in a vast scheme to defraud insurance companies and AKF's key role in that scheme was laid out in detail in United's Complaint in the Florida Litigation; accordingly, information relating to AKF is relevant and subject to discovery.[7]  However, United declined to name AKF as a party to the Florida Litigation.  Regardless of the propriety or legality of AKF's alleged actions, discovery is

---

[6] The fact a subpoena seeks discovery material from a non-party that is likely more easily obtained from another source—especially a party to the proceedings—is certainly a factor to be considered when assessing the burden a request imposes.  *See, e.g.*, *In re TQ Delta*, 2018 WL 5033756 at *2.  However, as the Court has noted in the past, in an adversarial process there is legitimate value in obtaining verification that an opposing party produced all the requested documentation.  *See* Tr. of Tele. Conf. 31:17-32:5, Aug. 23, 2017, ECF No. 27.

[7] *See* United Am. Compl. ¶¶ 6, 101-19, 120-55; *see also* Order Granting Mot. to Quash, *DaVita, Inc. v. UnitedHealthCare of Florida, Inc.*, Civ. A. No. 16-mc-00201-WLM-KMT (D. Colo. Nov. 16, 2016), ECF No. 28, AKF's Mot. for Fees Ex. E (noting that, "[w]hile United argues that it has 'carefully outlined how DaVita fits into the broader scheme that involves ARA, AKF, HIPP, and other dialysis providers,' this broader scheme is not what is at issue in the Florida [L]itigation").

guided by relevance to the claims and defenses in the underlying litigation; it is not to be used for fishing expeditions seeking to build a fire where one claims to see smoke. *See* Fed. R. Civ. P. 26.

While the Court finds that United used the Second Subpoenas at least in part for an improper purpose, the facts of this case do not persuade the Court to recommend an award to AKF for reimbursement of attorney's fees and costs it incurred in relation to that subpoena. Rather than engage in good faith negotiations with United to determine what items would be both relevant and impose no undue burden, AKF elected to file the underlying Motion to Quash after only one conference call with United's counsel. Further, the record indicates United refrained from seeking discovery from AKF until it had obtained discovery from ARA in the Florida Litigation. Such restraint indicates a willingness to ensure that any burden imposed would not be undue. The fact AKF eventually participated in depositions and turned over documents without a court order —however few they may have been in comparison to what was requested—indicates that some of United's requests were within the scope of discovery. AKF's voluntary compliance and United's evident willingness to narrow the requests underlines the likelihood that the parties could have reached this agreement without the Court's immediate involvement. Additionally, it is apparent that United was willing to entertain the prospect of covering the expenses of production, but AKF's own failure to fully engage in that negotiating process is in large part why the Court is now forced to decide this dispute today. By refusing to negotiate costs, AKF was essentially asking United to write a blank check. It very well might have been that United would have been willing to pay less money for less discovery were it made aware of the costs. Accordingly, by ignoring United's request for cost estimates, AKF conducted its discovery review at its own peril. *See Jeune v. Westport Axle Corp.*, No. 7:14-CV-

617, 2016 WL 1430065, at \*3 (W.D. Va. Apr. 8, 2016) (noting that the non-party seeking reimbursement of fees "made no attempt to discuss [ ] costs with [p]laintiffs before undertaking production").

### 2. AKF fails to support its claims that its fees were reasonable.

AKF's counsel presents arguments that it alone was suited to represent AKF in this proceeding. *See* AKF's Mem. in Supp. 6 (citing AKF's counsel's prior experience with a case where insurance company sought to prevent third-party premium provider from providing financial support to insured individuals). However, the Court finds AKF has not provided sufficient evidence to support its argument that the number of hours expended and the rates charged were reasonable for the task of responding to a set of subpoenas.[8] Further, AKF has presented insufficient justification for the number of attorneys it had present during hearings, conferences, or depositions in this matter and no explanation or justification for the number of associates or support staff assigned to conduct the document review.

Finally, AKF is not entitled to recover for fees associated with drafting and filing of its Motion for Fees, its Reply, or its Renewed Motion as those fees were not incurred in the course "complying" with United's subpoenas. *Cf. In re American Nurses Assoc.*, 643 F. App'x 310, 314 (4th Cir. 2016) (holding "attorney's fees incurred in pursuit of attorney's fees" were not recoverable as fees under Rule 45(d)(2)(B)(ii)). Similarly, the Court does not recommend an award of fees under its discretionary powers. Fed. R. Civ. P. 45(d)(1).

---

[8] Despite the Court previously alerting AKF to the insufficiencies of its filings, AKF provides no explanation or documentation supporting the rates it alleges the members of its litigation team are entitled to be reimbursed. For instance, the Court is unaware of the length of experience any of the members of AKF's litigation team has in their respective fields.

For the aforementioned reasons, despite United issuing the Second Subpoenas at least in part for an improper purpose, no sanctions are merited in this case. Accordingly, the Court recommends that AKF's Renewed Motion be denied.

### iii. Equitable Factors

In place of the aforementioned "undue burden" test, some courts have employed what essentially amounts to a balancing of the equities to determine whether to shift a non-party's fees and costs under this discretionary prong of Rule 45(d). *See, e.g.*, *Bell Inc. v. GE Lighting, LLC*, No. 6:14-CV-00012, 2014 WL 1630754, at *12 (W.D. Va. Apr. 23, 2014) (citing *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928–29 (N.D. Ill. 2010)). When undertaking this balancing, "courts must consider the following factors: (1) whether the non-party has an interest in the outcome of the case; (2) whether the non-party's financial status allows it to more easily bear the costs than the requesting party; and (3) whether the litigation is of public importance." *Jeune*, 2016 WL 1430065 at *2 (citing *Bell*, 2014 WL 1630754, at *13 (citations omitted)). While not the prevailing test in this district, overall the equities support the Court's determination above to deny AKF's Renewed Motion.

### 1. Interest in the Litigation

"When the non-party producing materials has a potential interest in the underlying litigation, courts have weighed that interest against shifting costs." *Juene*, 2016 WL 1430065 at *2 (citing *Bell*, 2014 WL 1630754, at * 13). An interested party is "[a] party who has a recognizable stake (and therefore standing) in a matter." *Bell*, 2014 WL 1630754 at *13 (citing Black's Law Dictionary (9th ed. 2009)) (internal quotations omitted).

While not directly on point, the court in *Bell* was presented with a similar situation as here. Bell, Inc., brought claims against GE Lighting, LLC ("GE") alleging it infringed on a

patent that Bell, Inc. had originally acquired from a third entity, iPack, Inc. ("iPack"). *Bell*, 2014 WL 1630754 at *1. In response, GE argued that "the patent underlying [the] suit [was] invalid because iPack or its predecessor in interest 'failed to disclose prior art and/or acquired the patent through inequitable conduct.'" *Id.* Accordingly, while never named as a party, iPack's conduct relating to the patent in question was central to the dispute and Bell, Inc. subpoenaed iPack for relevant information. *Id.* iPack later sought reimbursement for costs relating to its compliance. *Id.* In weighing the equities, the court found that iPack had an interest in the outcome of the litigation as it would affect its reputation and iPack would determine whether it would have to deal with future litigation relating to the patent. *Id.* at *13.

Here, the Court finds this factor weighs heavily against shifting of the costs of production to the serving party. AKF is without a doubt an interested non-party to the underlying litigation. In fact, AKF is the central and key non-party to the Florida Litigation. AKF has an interest in the outcome of the Florida Litigation as it would not only severely impact the charity's reputation, if these accusations were proven true it could likely expose AKF to further lawsuits and criminal actions relating to its dealings with other dialysis providers. *See id.* at *13; *see also Jeune*, 2016 WL 1430065 at *2 (finding Volvo was not an interested non-party to the underlying litigation as it had no financial stake in the litigation and no prior knowledge of how its actions would affect the other parties to the litigation). Therefore, it is expected that AKF would engage in rigorous efforts to oppose United's subpoena requests in order to protect its own interests.

## 2. Financial Status

Determining how the financial status of a non-party impacts the decision to shift costs is a case specific inquiry. *See, e.g.*, *Jeune*, 2016 WL 1430065 at *3 (noting the non-party seeking reimbursement of costs of production, Volvo, was a "world-recognized manufacturer of

automobiles and construction equipment" that had "approximately $32 billion USD in net sales" in 2014, while the plaintiffs were "individuals who currently earn approximately $11 to $13 per hour"); *Bell*, 2014 WL 1630754 at *14 (listing the financial limitations of the non-party that supported its claim of financial difficulty in complying with a subpoena). However, where a non-party fails to fully engage with the serving party to determine what costs they would be willing to cover, courts have minimized the weight afforded to this factor. *See, e.g.*, *Jeune*, 2016 WL 1430065 at *3 (noting that the non-party seeking reimbursement of fees "made no attempt to discuss [ ] costs with [p]laintiffs before undertaking production"); *Bell,* 2014 WL 1630754 at *14 (noting that while the factor tipped in favor of shifting the cost, the non-party producing the documents "undertook relevance and privilege review on its own" without disclosing to the serving party what the costs would be or engaging in their offer of an alternative, cheaper review by outside counsel). In fact, "[c]ourts in this district have found that it is untenable for a party to insist on individually reviewing all documents for privilege and responsiveness, rather than producing documents under a protective order with a claw back provision." *Bell*, 2014 WL 1630754 at *12 (citing cases).

Here, the Court finds this factor weighs moderately in favor of AKF. While the parties have submitted little information concerning their actual financial status, the two entities are dissimilar in this respect. It is undisputed that United is one of the largest for-profit insurance companies in the country. AKF's Reply 1. Supposedly, United reported quarterly profit earnings of $60 billion in July 2017. *Id.* In contrast, AKF is a 501(c)(3) non-profit charity that provides resources to low-income individuals nationwide. United's Am. Compl. ¶¶ 101-02. While the Court finds this tips the weight of this factor in favor of AKF, AKF's actions throughout this process cannot be overlooked. As previously discussed, AKF failed to fully

engage with the negotiation process concerning payment of costs and fees despite United explicitly asking for an estimate of the cost of production. Rather than provide such estimates, AKF undertook a relevance and privilege review on its own and elected to use its counsel's law firm to do so. Accordingly, AKF undertook the risk that it would not be reimbursed at all or even at the rates that it alone negotiated with its counsel. *See Jeune*, 2016 WL 1430065 at *3.

### 3. Public Importance

While the outcome of some cases may not result in particularly wide-reaching effects, the underlying issues within those cases can be of broad public importance. *See, e.g.*, *Jeune*, 2016 WL 1430065 at *3; *Bell*, 2014 WL 1630754 at *14. However, courts have varied in how the importance of a case effects the decision on whether to shift costs from one party to another. In *Jeune*, the court noted that while the case involved employment discrimination and was therefore "not particularly wide-reaching given the number of [p]laintiffs and the involvement of a local employer, the issue of religious discrimination [was] an issue of moderate public importance." *Id.* Accordingly, the *Jeune* court found this factor tipped against shifting costs of production from the responding non-party to the serving party. *Id.* In contrast, the court in *Bell* found "[t]he underlying litigation [did] not appear to be of particular public importance" as it was very specific to a particular patent. *Bell*, 2014 WL 1630754 at *14. Accordingly, the *Bell* court found the public importance of the case "weighs against shifting the costs of production" from the responding non-party to the serving party. *Id.*

Here, the Court finds the weight of this factor favors neither party. While the underlying Florida Litigation was without doubt important to United as a for-profit corporation protecting its bottom line, unearthing a broader scheme to steer vulnerable patients from affordable health insurance coverage to private, more expensive insurance carriers carries significant public

importance. In fact, few issues are as sensitive to the American public these days as the issue of affordable health insurance.

After assessing the relevant factors, the Court finds the weight of the equities leans against shifting AKF's costs of compliance to United. This is due to AKF's obvious interest in the outcome of the Florida Litigation as well as it decision to not engage in negotiations and electing to use its counsel to conduct its own discovery review for relevance and privilege. Therefore, the Court recommends that AKF's Renewed Motion be denied.

### C. United's Motion for Sanctions

United included in its supplemental filing a request that this Court impose sanctions upon AKF, arguing in sum that AKF's motion for sanctions was "unjustified." United's Opp'n to AKF's Renewed Mot. 19-20. As detailed above, while the Court ultimately declines to recommend sanctions in this matter, the Court disagrees that there was no merit to AKF's request. Accordingly, the Court recommends the denial of United's informal motion for sanctions.

### III.       Conclusion

In light of the evidence that United issued the Second Subpoenas at least in part for an improper purpose; but mitigated by the fact United engaged in good faith negotiations to ensure any discovery produced would not impose an undue burden; and in light of AKF's failure to engage in negotiations over costs of production, it is my recommendation that AKF's Renewed Motion be denied. Additionally, pursuant to the Local Rules and this Court's prior order, it is my recommendation that AKF's Letter-Motion to Strike be denied. Finally, in light of my recommendation concerning AKF's Motion for Fees, it is my recommendation that United's informal motion for sanctions be denied.

April 29, 2019

_____/s/_____

Charles B. Day
United States Magistrate Judge

CBD/clc